[Civ. No. 951.    Second Appellate District.—October 13, 1911.]

EXCHANGE NATIONAL BANK, a Corporation, Appellant,
v. J. A. ROSS, Respondent.

CONTRACT TO SELL LAND—PURCHASER'S NOTES ASSIGNED AS SECURITY—NEGOTIATION FOR SALE TO THIRD PARTY—ESCROW — PAYMENTS AGREED—NOTICE OF ASSIGNMENT—LIABILITY ON NOTES.—Where defendant, who was a purchaser under a contract to sell land and had given his installment notes therefor, which had been assigned by his vendor to secure his indebtedness to the plaintiff bank, did, without notice of such assignment, negotiate with his vendor and a third party for a deposit of money in escrow, to enable a sale of the land to pay a prior mortgage thereon of $2,000, and to satisfy his

debt to the vendor, with the result that the plaintiff received nothing, but where it appears that before the sale was consummated, defendant received notice of the transfer of his notes to the plaintiff bank, he is liable thereon to such bank, as assignee of his notes, notwithstanding the terms of the sale.

ID.—FINDING AGAINST EVIDENCE—ESTOPPEL OF PLAINTIFF—ACQUIESCENCE IN AND CONSENT TO SALE.—Although a finding that "after the placing of said money in escrow . . . the plaintiff, having knowledge of the deposit of said money in escrow, consented to and urged the carrying out of said escrow," would, if sustained by the evidence, show that the plaintiff bank had thereby estopped itself from thereafter making any claim against defendant upon the contract of indebtedness, yet it is held that the evidence is wholly insufficient to sustain such finding, but is to the contrary, and shows that defendant recognized the claim of such bank, and gave instructions that the deal was not to be carried out until the notes held by the bank had been surrendered to the vendor of the land who assigned them thereto.

ID.—NEGOTIATION FOR PAYMENT OF DEBT OF PURCHASER TO VENDOR WITHOUT EFFECT—RIGHTS OF BANK.—Where it appears that the defendant had paid only $600 out of a total sum of $2,250 to be paid under his contract of purchase, when he negotiated with the vendor and the third party to transfer his interest in the land, and thereby satisfy his debt to the vendor, but the plaintiff with his knowledge had acquired the right to receive all moneys when due under his contract of indebtedness, any settlement or compromise made by him with the vendor was without effect as against the rights of the plaintiff to collect the full amount of his indebtedness.

APPEAL from a judgment of the Superior Court of the County of Los Angeles.   Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Roland G. Swaffield, for Appellant.

Simpson, Moody & Simpson, and J. H. Merriam, for Respondent.

JAMES, J.—Action brought upon five promissory notes, each being for the sum of $300, executed by defendant and made payable to S. A. Sanderson or order.   These notes were negotiable in form, but were given to represent a certain indebtedness arising upon a contract for the purchase of real property.   On June 28, 1906, defendant and S. A. Sanderson

entered into a written contract whereby Sanderson agreed to
sell and defendant to buy portions of two lots of land in the
city of Long Beach. The contract provided that the defend-
ant should pay a total sum of $2,250 for the property, and
that he was to receive a clear title thereto. The promissory
notes were given as evidence of the partial payments to be-
come due under the contract, it being provided in the latter
instrument that the sum of $300 should be paid by defendant
Ross upon the execution of the contract, and the further sums
of $300 every six months thereafter, except that the final pay-
ment of $150 was to be made three months after the last in-
stallment of $300 became due. On April 26, 1907, Sanderson
assigned the contract, together with the promissory notes in-
cident thereto, to the plaintiff bank as collateral security for
the payment of a large indebtedness then owing by him to
said plaintiff. At the time the contract referred to was made,
the real property which was the subject thereof was encum-
bered by a mortgage given prior thereto by Sanderson to
secure an indebtedness of $2,000 owing to one Mary M. Shaw.
At the time the assignment of the contract was made by San-
derson to plaintiff, defendant Ross had paid all of the money
then required to be paid by him, to wit, the initial payment
of $300 and the payment of the further sum of $300 which
had fallen due on December 28, 1906. Before defendant had
notice that Sanderson had assigned the contract and notes to
the plaintiff, he had entered into some agreement whereby it
was contemplated that one Kirsher should be given title to
the real property agreed to be conveyed by Sanderson to de-
fendant. Certain money which was to be used in the con-
summation of the latter deal was deposited with the escrow
clerk of the Citizens' Savings Bank of Long Beach, but before
this transaction was finally consummated defendant Ross re-
ceived notice that the plaintiff bank held the contract and
notes which he had theretofore executed in favor of Sander-
son. Notwithstanding this notice, a sale of the property was
made to Kirsher, the money received being used to satisfy the
mortgage indebtedness then outstanding to Mrs. Shaw, and
the plaintiff bank received nothing. The latter commenced
this action on July 2, 1909, at which time the several notes
for $300 each, falling due, respectively, on June 28, 1907;

December 28, 1907, June 28, 1908, December 28, 1908, and June 28, 1909, had all matured. The trial court found in favor of the defendant and entered a judgment accordingly, from which judgment, and from an order denying its motion for a new trial, the plaintiff has appealed.

The appeal may be determined by an examination of the questions presented by appellant touching the sufficiency of the evidence to sustain the findings of the trial court. Among other facts determined, the trial court made the following findings: "That after the placing of said money in escrow with said Citizens' Savings Bank by said defendant and said Kirsher as aforesaid, the plaintiff, having knowledge of the deposit of said money in escrow as aforesaid, consented to and urged the carrying out of said escrow." This finding was made evidently with the view entertained by the trial judge that, while defendant, after receiving notice that his contract and notes had been assigned by Sanderson to the bank, was answerable to the bank on account of payments becoming due under said contract, the plaintiff had by acquiescence in the sale of the property to Kirsher and the carrying out of the terms of that transaction, whatever they may have been, estopped itself from thereafter making any claim against the defendant on account of the contract indebtedness. If the fact had appeared in evidence according to the terms of the finding of the court, no doubt the legal result just indicated would follow, but the evidence is wholly insufficient to sustain the finding. Nowhere in the bill of exceptions is it shown just what the contract proposed to be made with Kirsher, and which was presumably evidenced by some writing placed with the escrow-holder, was. Defendant Ross admitted that before the deal with Kirsher had been carried out he received notice from the plaintiff bank that it held his contract and notes, and he himself testified upon that subject as follows: "The money was put up in the bank about July 19, 1907, and I learned the Exchange National Bank held the notes a short time after that. At the time the money was paid over and the deed from Sanderson to Kirsher delivered, I knew that the Exchange National Bank held these notes. Prior to that time I had gone to Mr. Julian [the escrow clerk] and told him not to turn that money over to Sanderson until he had possession of the notes. I had several conversations with Mr.

Wallace of the Exchange National Bank with reference to these notes prior to the closing of the deal on September 6, 1907.'' The following testimony given by the cashier of plaintiff bank was uncontradicted by any testimony which appears in the record: ''While the money was still in escrow in the Citizens' Savings Bank, and in the early part of August, 1907, Mr. Ross told me that he had instructed Mr. Julian not to deliver the money to Sanderson until he had possession of the notes. During the early part of August, 1907, after I had written Mr. Ross relative to these notes, notifying him that we were the owners of the same, and after I had received a reply, I had several conversations with Mr. Ross relative to the payment of these notes. He came to the bank two or three times trying to get the notes and stated that he had sold the property and asked me if I wouldn't turn over those notes so that he could complete the escrow as he had sold the property. I suggested he could, upon satisfying what Mr. Sanderson owed us, I would turn over the notes. Then he said he would notify Mr. Julian or notify the bank, not to turn over that money until we got the money concerning that point. This occurred after I had written him as I before stated and after he had replied and during the early part of August, 1907.'' There was also introduced in evidence the following letter, which was identified by defendant as having been received by him:

''August 6, 1907.

''Mr. J. A. Ross,
    Pasadena, Calif.
''Dear Sir:
    ''We are in receipt of your letter of the 2nd inst., explaining that the $1650 had been in the First National Bank of this city since June 28th to pay off notes bearing your name. We thank you for this information and will have to admit that we were not aware of the transaction. We are notifying the First National Bank today and urging them to hasten the cleaning up of this matter.
                ''Very truly yours,
                    ''WM. H. WALLACE, Cashier.''

This is in substance all of the testimony introduced touching the matter of any alleged consent given by plaintiff bank

to the carrying out of the Kirsher deal, and it is far from establishing the important fact found by the court, that the bank consented to the carrying out of the escrow agreement in the way in which it was carried out, with the result that plaintiff should receive nothing on account of the contract and notes held by it. As before noted, the testimony as shown in the record is meager indeed, upon the subject of just what the escrow directions, as given to the Citizens' Savings Bank, were. Conceding that the promissory notes and agreement of purchase taken together evidenced a contract non-negotiable in form, and that therefore until defendant Ross had notice of the assignment thereof to plaintiff, he would have been justified in making payment of his obligation to his original creditor, Sanderson, the case as it is presented to us stands without any evidence tending to show that Ross had by any binding contract satisfied his indebtedness to Sanderson before notice that the bank held his contract and notes was received by him. The defendant did in fact recognize the claim of the bank and represented to the latter that he had given instructions that the Kirsher deal was not to be carried out until the notes held by the bank had been surrendered. Quoting his own words, he said: "Prior to that time I had gone to Mr. Julian and told him not to turn that money over to Sanderson until he had possession of the notes." We do not regard the evidence referring to the satisfaction of the mortgage held by Mrs. Shaw, and the finding based thereon, as material to a determination of the controversy. It may be added that the evidence does not show that the total consideration received on the Kirsher deal was only sufficient to satisfy the mortgage held by Mrs. Shaw. Witness Julian, the escrow clerk, testified as follows: "The total amount put up was something like $2,100. The selling price of the property as we had it was part money and part trade." The facts were that defendant Ross, having made payment of $600 on account of a total sum of $2,250 to be paid under his contract for the purchase of real estate, entered into a negotiation with Sanderson and Kirsher by which he proposed to transfer his interest in the property and so satisfy his debt to Sanderson. At that time he owed no debt to Sanderson, plaintiff bank having acquired the right to receive all moneys due under the

contract, and any settlement or compromise made with Sanderson was without effect as against the right of the bank to make collection of the full amount of the indebtedness. As we have pointed out, there is no evidence sufficient to justify the finding of the court that the plaintiff bank gave consent to any attempted settlement made by the defendant with the original payee of the contract and notes.

It follows that the judgment and order must be reversed, and it is so ordered.

Allen, P. J., and Shaw, J., concurred.